The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At all times in question, the City of Raleigh was self-insured.
2. (570501) On August 27, 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer to his right knee.
3. (623800) On February 26, 1996 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer to his right knee.
4. Plaintiff missed less than seven days of work after the August 22, 1995 and February 26, 1996 injuries and defendant has paid the medical bills up through approximately June 16, 1996.
The parties submitted a Pre-trial Order which is incorporated by reference. The documents attached to the order were stipulated into evidence.
 ***************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. As of the date of hearing, plaintiff had been employed by defendant for approximately seven and one-half years as a water meter mechanic. His job duties included repairing and changing water meters for city residents. The residential meter boxes each weighed approximately seventy-two pounds and were usually buried in the ground near the street. Consequently, he would have to kneel and squat a significant amount of the time he was performing his job duties.
2. On August 27, 1995 plaintiff was changing a water meter which was unusually deep so he had to get down very low. As he was coming up from that position, his right knee popped and then began to swell. After he reported the injury, he was sent to Dr. Vaughn, an orthopedic surgeon, who diagnosed his condition as prepatellar bursitis. Dr. Vaughn aspirated the knee, gave him an immobilizer, prescribed medication and instructed him to put ice on the knee. He was allowed to return to work on August 28 and he apparently did return to work at that time.
3. Plaintiff continued working until February 1996 but on February 26, 1996 he had a similar incident. He had been working in a kneeling position and, when he began to get up, he again experienced a popping sensation and immediate swelling in his right knee. Dr. Venters, an orthopedic surgeon, examined him the next day and diagnosed him with bursitis over the tibial tubercle. His knee was aspirated and Dr. Venters injected medication into the affected area. When plaintiff returned to the doctor on March 12, his condition was improved so Dr. Venters released him to return to regular activities except that he was to avoid pressure on the knee.
4. Plaintiff subsequently resumed his regular work duties. On Friday, June 14, 1996 he was assigned a job where he needed to change the back flow device in a residential water meter so he had to remove the meter box. Since it was summertime, the ground around the meter box was very hard and he was unable to dig it out with a shovel. He then got a digging bar which he would push into the ground and hook into one of the slots under the meter box and then try to pry it out. As he was pushing on this bar as hard as he could, his right knee suddenly popped. A coworker whom he had earlier radioed for help arrived almost immediately and finished the job for him. Plaintiff then returned to the shop and informed his supervisor, Alex Walton, of the injury. Somehow what plaintiff said did not register with Mr. Walton who was apparently preoccupied with another conversation or matter so an accident report was not prepared and plaintiff was not sent for medical attention. Not realizing that he had not actually communicated with his supervisor, he returned to work even though his knee was quite painful, and he worked the rest of the afternoon. Over the weekend, he tried to keep his knee elevated and applied ice to it.
5. Plaintiff's knee continued to bother him but he returned to work the next Monday and worked that entire week. He did not speak to his supervisor again about the problem. On Sunday, June 23, while at home, he bent over to light his gas grill and his right knee popped loudly. He then fell to the ground. The joint was essentially frozen and remained that way until he saw Dr. Venters the next day. Dr. Venters concluded that he had a bucket handle tear of the medial meniscus and recommended surgery. However, defendant would not authorize the treatment so plaintiff decided to go to Kaiser where he would have insurance coverage.
6. On June 26, 1996 plaintiff was examined by Dr. Goodnough, an orthopedic surgeon at Kaiser, who concurred with Dr. Venters' diagnosis and who performed arthroscopic surgery the following day. In the operation, Dr. Goodnough found and repaired a bucket handle tear of the medial meniscus. No other abnormalities were observed. He then followed plaintiff's recovery until August and allowed plaintiff to return to work at light duty on July 23, 1996.
7. Although plaintiff was pushing very hard on the digging bar on June 14, 1996 when his knee popped, it was a situation which he faced regularly during the summer months when the ground was hard. He would have to use the bar at least once or twice each week. There was nothing unusual or out of the ordinary in the way he pushed on the digging bar on June 14, 1996 nor was there an interruption of his regular work routine. Consequently, although he sustained an injury arising out of and in the course of his employment, he did not prove that the injury resulted from an accident.
8. Unfortunately, plaintiff did not get medical treatment following the June 14 injury so the specific nature and location of his symptoms could not be determined. He indicated that he had pain similar to his previous episodes, only worse. However, his earlier bouts of knee pain had been associated with bursitis, a condition quite distinct from a cartilage tear. Dr. Venters had found no evidence of a problem with his medial meniscus the previous February. To make matters worse, neither Dr. Venters nor Dr. Goodnough obtained a complete history from plaintiff. Plaintiff apparently did not tell either doctor about the June 14 incident. Furthermore, Dr. Goodnough did not have access to Dr. Venters' reports and appeared to be under the mistaken impression that Dr. Venters had recommended surgery as early as February 1996 for a meniscal tear.
9. Most meniscal tears result from a specific injury, and the greater weight of the evidence shows that plaintiff tore his medial meniscus on June 23, 1996 at home. Findings in surgery did not reveal whether there had been any previous tears at that location, but there was no sign of degenerative changes elsewhere in the knee joint.
10. Dr. Goodnough expressed opinions that plaintiff was placed at an increased risk of sustaining a meniscal tear by reason of the kneeling and squatting required by his job and that his condition resulted from his work. However, Dr. Goodnough was never provided the actual facts surrounding the development of plaintiff's knee problems and his opinions were based on some significant errors of fact. Dr. Venters was also under the mistaken impression that plaintiff had been having pain in the area of his medial meniscus since his previous injury in February and indicated that the condition was an extension of the pre-existing injury. However, the evidence did not reveal any indication of meniscal problems or pain before June 1996.
11. Plaintiff did not prove that the meniscal tear for which he was treated beginning June 24, 1996 was an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant and which excluded all ordinary diseases of life to which the general public was equally exposed.
12. The meniscal tear in question was also not proven to have been a direct and natural result of the August 22, 1995 or February 26, 1996 injuries at work.
 ***************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on June 14, 1996. G.S. § 97-2(6).
2. Plaintiff's meniscal tear was not an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. G.S. § 97-53(13); Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
3. The torn medial meniscus for which plaintiff was treated beginning June 24, 1996 was not proven to have been a direct and natural result of his compensable injuries in August 1995 or February 1996. G.S. § 97-2; Vandiford v. Stewart Equipment Co.,98 N.C. App. 458, 391 S.E.2d 193 (1990).
4. Plaintiff is not entitled to benefits under the Workers' Compensation Act for the bucket handle tear of the medial meniscus of his right knee. G.S. § 97-2 et seq.
 ***************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. This claim must, under the law, be and it is hereby denied.
2. Defendant shall pay the telephone expenses associated with Dr. Goodnough's deposition as part of the costs associated with that deposition.
3. Each side shall pay its own costs.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ RENEÉ C. RIGGSBEE COMMISSIONER
LKM:bjp